L. & L. INDUSTRIAL PRODUCTS COMPANY, Inc., Appellant,

v.

ALBERT E. KUEHNERT, AUCTIONEERS, INC., Appellee.

No. 4003.

Court of Civil Appeals of Texas.

Eastland.

May 6, 1966.

Rehearing Denied June 10, 1966.

John Holloway and Gerard Isken, Houston, for appellant.

Dougal C. Pope, Houston, for appellee.

COLLINGS, Justice.

L. & L. Industrial Products Company, brought this suit against Albert E. Kuehnert, Auctioneers, Inc., seeking to recover upon an auctioneering contract whereby plaintiff was to receive a guaranteed minimum of $25,000.00 for the sale of various and sundry items belonging to plaintiff and listed in detail in the contract attached to plaintiff's "Exhibit A". L. & L. Industrial Products Company, Inc., hereinafter referred to as the Company admitted certain payments by defendant but alleged that defendant, hereinafter referred to as the auctioneer, was still indebted to the plaintiff Company in the sum of $10,-768.20, plus 10% interest. Based upon a jury verdict, judgment was rendered for the Company in the sum of $1,129.19. L. & L. Industrial Products Company, Inc., has appealed.

The material portion of the contract designated as "Exhibit A" attached to the plaintiff's petition is as follows:

"EXHIBIT A

L & L Industrial Products Company, Inc., hereinafter called Company, hereby employs ALBERT E. KUEHNERT AUCTIONEERS, INC., hereinafter called Auctioneers and Auctioneers hereby accept such employment to sell at public auction all the equipment and materials listed on the attached inventory sheet and all other miscellaneous items of personal property belonging to and now located at L & L Industrial Products Co., Inc., at 234 McCarty Drive,

Houston, Harris County, Texas, upon the terms and conditions as set out herein.

\* \* \* \* \* \*

(2) Auctioneers guarantee to Company that Company will receive from such sale a minimum net cash guarantee of Twenty-Five Thousand Dollars ($25,000.-00) over and above all commissions and expenses. The first Twenty-Five Thousand Dollars ($25,000.00) realized from such auction, shall be delivered to Company without any deductions whatever. Auctioneers agree to furnish to Company a performance bond in the amount of Twenty-Five Thousand Dollars ($25,000.-00) guarantying Company in the full performance of this agreement by Auctioneers and guarantying in particular, the payment to Company of the minimum net cash guarantee in the amount of Twenty-Five Thousand Dollars ($25,000.00). This bond shall be upon terms and conditions acceptable to Company and executed by persons, firms or corporations acceptable to Company.

\* \* \* \* \* \*

(6) After Company has realized and has received the cash minimum sum of Twenty-Five Thousand Dollars ($25,-000.00) from the proceeds of the auction sale, Company shall pay from any further proceeds, from the auction sale, and to the extent of such further proceeds to Auctioneers, as compensation for its undertakings herein, commissions as follows:

7.5% commission on the first Twenty-Five Thousand Dollars ($25,000.00) proceeds from auction sale.

10% commission on the next Five Thousand Dollars ($5,000.00) proceeds from auction sale.

15% commission on the next Five Thousand Dollars ($5,000.00) proceeds from auction sale.

30% commission on any proceeds from the auction sale in excess of Thirty-Five Thousand Dollars ($35,000.00).

Based on the above commission schedule, the aggregate commissions payable to Auctioneers, in accordance of the terms of this agreement up to Thirty-Five Thousand Dollars ($35,000.00), will total Three Thousand One Hundred Twenty Five Dollars, ($3,125.00), and on any proceeds exceeding Thirty-Five Thousand Dollars ($35,000.00), the Auctioneers will receive a commission of thirty per cent (30%) on such excess.

(7) All proceeds of the sale until the sum of Twenty-Five Thousand Dollars ($25,000.00) has been realized, shall be delivered to Company upon its receipt. Thereafter, Auctioneers may deduct from the further proceeds of the auction sale, the commissions and expenses chargeable under the agreement to Company (Two Hundred Dollars ($200.00) as provided in paragraph 3) and shall deliver to Company immediately any proceeds in excess thereof. In the event the auction sale does not produce the minimum cash Twenty-Five Thousand Dollars ($25,000.00) guarantee, then the sureties on the performance bond shall pay to Company by June 30th, 1961, the deficiency in such sum of Twenty-Five Thousand Dollars ($25,000.00). All monies not paid to Company within the time herein provided, shall bear interest at the rate of ten per cent (10%) per annum until paid. In the event collection is through suit or if Company finds it necessary to employ an attorney to effect collection, then an additional ten percent (10%) of the amount collected shall be paid as attorney's fees. \* \* \*"

■ The defendant auctioneer answered by general denial, by amended original answer and by a cross-plaintiff trial amendment alleging that the Company breached the contract in that although the contract provided that all the equipment, materials and other property listed on the inventory

was to be sold that there were many items so listed that the auctioneer was not permitted to sell, including all electrical switch boxes, wiring and many other items. The auctioneer further alleged that after the execution of the written agreement attached to plaintiff's original petition and at various times before the auction sale, it was verbally agreed between the parties that the company would have all of its equipment in operative condition; that the auction sale should proceed in the ordinary and normal manner; that the auctioneer would not have to post the bond required in the above mentioned written contract because an agreeable surety could not be found and that no minimum guarantee to the company would be required; that auctioneer could sell the goods of others on consignment, but that neither the company nor any of its officers or representatives would bid at the auction sale. Appellee auctioneer further alleged that the company breached its contract by failing to permit the sale of the electrical wiring from the building, by allowing one Grenader to make purchases and thereby becoming a "shill", thus affecting the proceeds of the sale, and in permitting garnishment to be served during the auction which affected the proceeds of the sale. We overrule appellant's point complaining of the action of the court in allowing appellee to file a trial amendment alleging an oral contract between the parties after the execution of the written contract. In our opinion such action was not an abuse of discretion. Rule 66, Texas Rules of Civil Procedure.

The jury findings which are the basis of the judgment are as follows:

"*Special Issue No. 1*

Do you find from a preponderance of the evidence that the plaintiff, L & L Industrial Products, Inc., acting through its duly authorized agents, substantially complied with the terms of the written contract executed June 9, 1961, in connection with the auction of the property of said plaintiff?

To which the jury answered, 'We do not'.

*Special Issue No. 2*

Do you find from a preponderance of the evidence that after the execution of the written contract, Leslie and Kuehnert agreed orally to have the auction sale with no minimum guarantee to Leslie?

To which the jury answered, 'We do'.

*Special Issue No. 3*

Do you find from a preponderance of the evidence that Leslie refused to allow Kuehnert to offer for sale at auction that electrical equipment which was not sold?

To which the jury answered, 'We do'.

If you have answered Special Issue No. 3 'We do', and only in that event, then answer:

*Special Issue No. 4*

Do you find from a preponderance of the evidence that such conduct, if any, by Leslie constituted a breach of contract as that term is herein defined for you?

To which the jury answered 'We do'.

If you have answered Special Issue No. 4 'We do' and only in that event, then answer:

*Special Issue No. 5*

Do you find from a preponderance of the evidence that such breach of contract, if any, was substantial?

To which the jury answered, 'We do'.

\*     \*     \*     \*     \*     \*

*Special Issue No. 9*

Do you find from a preponderance of the evidence that before the auction was held Mr. Leslie and Mr. Kuehnert agreed to abandon the written contract?

To which the jury answered, 'We do not'.

*Special Issue No. 10*

What amount of money, if any, if paid now in cash, do you find from a preponderance of the evidence to be the usual, customary and reasonable compensation for the type of services rendered by Mr. Kuehnert as auctioneer?

To which the jury answered '1,604.05.' "

Appellant's contention on this appeal is, as it was in the trial court, that the guarantee of a minimum of $25,000.00 provided by the written contract is effective and binding against appellee, and that appellee failed to meet the guaranteed amount and failed to pay over to appellant the proceeds of the sale or to account therefor. The sale in question produced $24,366.40, but there was included in that amount the sum of $2,917.00, representing consigned goods belonging to other persons and not to appellant company. It is undisputed that the proceeds from the sale of goods belonging to appellant company amounted to $21,449.40, which is $3,350.60 below the guaranteed amount of $25,000.00. It is undisputed that out of the $21,449.40, realized from the sale of property belonging to the company, appellee auctioneer is entitled to apply the following offsets:

| | |
|---|---|
| Accounts receivable to Mr. Grenader .. | $ 1,870.00 |
| Small Business Administration loan ... | 14,329.62 |
| Garnishment and attorneys' fees expended .............................. | 2,400.00 |
| Total: | $18,599.62 |

Appellant contends that after deduction of the above expense items it is undisputed that the auctioneer has in its hands $2,849.78 net from the sale of appellant's equipment and property which, when added to the $3,550.60, the amount below the

$25,000.00 guarantee, amounts to $6,400.38; that, as a matter of law, appellee auctioneer is indebted to the company in that amount, plus interest and attorney's fees.

Appellant urges numerous points contending that the judgment should be reversed and rendered in its favor based on the undisputed amount of money retained from the sale in the hands of appellee and the guarantee of $25,000.00 provided by the written contract, together with interest and attorneys' fees as therein provided. Appellant urges in the alternative that the verdict be set aside and the judgment reversed because of the errors complained of, and that the cause be remanded for a new trial.

Appellee has not favored us with a brief. However, from the record and appellant's brief, it is apparent that two general matters are involved in this appeal. First, whether appellant is entitled to recover the $3,550.60 difference between $21,449.40, the undisputed amount of the proceeds received by Auctioneer for the sale of appellant's merchandise, and the $25,000.00 guarantee, and the interest and attorney's fees provided for in the written contract and, second, whether the court erred in refusing to disregard the finding in answer to special issue number 10 that $1604.05 is the usual, customary and reasonable consideration for appellee's services as an auctioneer in selling the merchandise in question, and in entering judgment permitting appellee to recover a sales commission on a quantum meruit basis because, appellee contends, there are no pleadings, no evidence and insufficient evidence to support such finding.

Appellant's suit was based in part upon the provision of the written contract for a $25,000.00 guarantee by appellee auctioneer. In connection with this portion of appellant's suit the jury found in answer to special issue number 1 that appellant did not substantially comply with the terms of the written contract. In answer to special issues 3, 4, and 5, the jury found that ap-

pellant refused to allow appellee to offer for sale at the auction the electrical equipment which was not sold, that such refusal was a breach of the contract and that such breach was substantial. Appellant contends that there is no evidence and that the evidence is insufficient to support the above findings and that such findings are against the great weight and preponderance of the evidence. We overrule these points. We do not discuss the evidence relating thereto because in our opinion these points are not controlling in the determination of this appeal.

In connection with appellant's right to recover on the $25,000.00 guarantee, the jury found in answer to special issue number 2 that after execution of the written contract appellant's president Mr. Leslie, and appellee Kuehnert agreed orally to have the sale with no minimum guarantee. This finding, if allowed to stand, precludes a recovery by appellant on the provision of the written contract for a $25,000.00 guarantee, regardless of whether appellant substantially complied with the written contract. We overrule appellant's contention that there is no evidence that the parties orally agreed to waive the minimum guarantee. Mr. Kuehnert testified that he would not have entered into the written contract guaranteeing the minimum if he had known that he would not be allowed to sell the electrical equipment and other major specific items. He stated in this connection that he was told by appellant's president to "go on with the sale as usual". However, the jury in answer to special issue number 9 found, in effect, that Mr. Leslie and Mr. Kuehnert did not agree to abandon the written contract. In our opinion a fatal conflict exists between the findings in answer to issues 2 and 9. Even if appellant should be correct in its contention that the effect of the finding under issue 9 was that the sale was held under the contract, and that there is no evidence and insufficient evidence to support the findings that it did not substantially comply with the terms of the written contract, still appellant could not recover under the provision for a $25,000.00 guarantee because of the finding in answer to special issue number 2 that the parties after the execution of the written contract agreed orally to have the sale with no minimum guarantee.

Appellant Kuehnert filed a trial amendment alleging that after the execution of the written contract there was an oral agreement between the parties that appellee should conduct the auction sale in the normal and usual manner for such sales without posting bond and without the minimum guarantee provided for in the original contract; that appellant would pay all garnishments, liens and internal revenue obligations and attorneys' fees which appellee was required to pay as a result thereof, from the proceeds received from the sale. Based upon such allegations appellee Kuehnert sought to recover from appellant "a reasonable compensation for such service upon the doctrine of quantum meruit".

The jury found in answer to special issue number 2 that the parties agreed to have the auction sale with no minimum guarantee and special issue number 10 submitted to the jury the question of "the usual customary and reasonable compensation for the type of service rendered by Mr. Kuehnert as auctioneer." The answer of the jury thereto stated the amount to be $1,604.05. The submission of special issue 10 to the jury and the answer thereto was unquestionably based upon appellee's claimed right to recover on the doctrine of quantum meruit. Appellee's right to recover on the doctrine of quantum meruit was based upon the finding under issue number 2 that the parties agreed to have the auction sale with no minimum guarantee to appellant. It is again noted that the jury in answer to special issue number 9 found that Mr. Leslie and Mr. Kuehnert did not agree to abandon the written contract. Appellant contends that a fatal conflict exists between the find-

ings to issues 2 and 9. We agree with this contention.

The answer to special issue number 2, disregarding the conflicting answer to special issue number 9 but taking into consideration all the rest of the verdict required a judgment for appellee on the theory of quantum meruit. The answer to special issue number 9, disregarding the conflicting answer to special issue number 2, but taking into consideration all the rest of the verdict, destroyed appellee's right to a judgment on the basis of quantum meruit. Appellee had no right to recover on the basis of quantum meruit under the written contract. The judgment on the verdict containing such conflicting answers must be set aside. Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985.

For the reasons stated, the judgment is reversed and the cause is remanded.